# MANUFACTURERS N. GAS CO. v. M. V. DOUGLASS ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, IN EQUITY.

Argued October 21, 1889—Decided November 11, 1889.
[To be reported.]

1. The proviso to the act of May 25, 1878, P. L. 149, authorizing·the reformation of certificates of acknowledgment of deeds, etc., excludes from the operation of the act only cases in which actions to recover the real estate were commenced before the date of the passage of the act.

2. The remedy by bill in equity, given by the act, carries with it the usual attributes of equitable remedies, including the rule that the court shall have before it and determine the rights of all the parties interested in the subject matter of the litigation.

3. Where a party interested adversely to the plaintiff in the bill is not made a party defendant, but has appeared as the attorney for the defendant throughout the proceedings, the court, upon adjudging him a necessary party, should permit him to be added as a defendant.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 13 October Term 1889, Sup. Ct.; court below, No. 551 C. P. in Equity

On March 1, 1888, the Manufacturers Natural Gas Company filed a bill in equity against M. V. Douglass and S. M. Douglass, his wife, averring in substance that on December 29, 1885, the defendants executed, acknowledged and delivered to C. Meyran an oil- and gas-lease of a certain tract of land belonging to said S. M. Douglass; that the lease was afterwards assigned by the lessee to the plaintiff company, who had paid the rentals due upon it in full to the date of filing the bill; that Mrs. S. M. Douglass acknowledged the lease upon a separate examination before a justice of the peace, in due form of law, but in writing the certificate of the acknowledgment the justice omitted to state that the contents of the instrument were made known to her;—praying for a decree reforming the certificate of acknowledgment in accordance with the actual facts and for general relief.

The defendants answered denying that Mrs. S. M. Douglass joined her husband, M. V. Douglass, in making and becoming a party to the lease mentioned in the bill, or that she ever appeared before the justice and acknowledged said lease; averring that the rentals mentioned in the bill were paid to M. V. Douglass, without the knowledge or consent of his said wife; and that on January 21, 1888, the defendants executed and delivered a lease of said land to C. M. Reed, Jr., which was now held by L. McCarrell, Esq., who, prior to the filing of the bill, had brought an action of ejectment against the plaintiff company, to recover possession of the demised premises.

Issue having been joined the cause was referred to *Mr. M. L. A. McCracken*, as examiner and master, by whom the following facts were found:

On June 8, 1885, Mrs. S. M. Douglass was the owner in her own right of the land embraced in the lease mentioned in the

bill, and then was and still was the wife of the other defendant, M. V. Douglass. On that date, M. V. Douglass executed the lease in question. It bore date that day, purported in the premises to be between M. V. Douglass of the first part and C. Meyran of the second part, and the party of the first part was uniformly referred to in it in the singular number. The attestation clause commenced: " In witness whereof we, the said parties of the first and second parts, have hereunto set our hands and seals." On December 29, 1885, Mrs. S. M. Douglass joined her husband in the execution of the lease, and signed, sealed and delivered it as her act and deed, and the same day she and her husband acknowledged it together before James McCullough, Esq., a justice of the peace. Mrs. Douglass was at the time examined by said justice separate and apart from her husband, the contents of the lease were made known to her by the justice on such separate examination, and she then and there said that she signed, sealed and delivered the lease as her voluntary act, without any coercion or compulsion of her husband. In every respect the acknowledgment was taken as required by law, but the justice wrote out and made his certificate of the acknowledgment in the following form :

" On this 29th day of December, A. D. 1885, before me, a Justice of the Peace, in and for said county, came the above named M. V. Douglass and S. M. Douglass, his wife, and acknowledged the foregoing indenture to be their act and deed, desiring the same to be recorded as such. S. M. Douglass, his wife, who being examined separate and apart from her said husband, acknowledged it to be her act and deed, without any compulsion on part of her husband and to be recorded as such.

" Witness my hand and seal, the day and year aforesaid."

Under the terms of the lease, the lessee was to commence operations on the premises within one year from its date, or thereafter pay the lessors one dollar an acre per year until work should be commenced. Work was not commenced, but the rental was regularly paid by the plaintiff company, to whom the lease had been assigned by the lessee, and was received by the defendants. The last payment on account of rental was made May 24, 1887. It was a payment in advance, and included rental up to June 5, 1888.

On January 21, 1888, before any proceedings were taken on

Master's Report.

the part of the plaintiff company to reform the acknowledgment of the lease held by it, the defendants, for a valuable consideration, executed a lease of the same premises to C. M. Reed, Jr., receiving from him a bonus more than sufficient to enable them to repay the rents they had received from the plaintiff, but they never offered to do so. This second lease was assigned by Reed to L. McCarrell, Esq., who, prior to the filing of this bill, brought an action of ejectment against the plaintiff for said premises, which action was commenced and was pending before any steps were taken by the plaintiff to reform and perfect the acknowledgment of its lease.

Upon the facts so found by him the master reported as follows :

The plaintiff's bill is filed under the provisions of an act approved May 25, 1878, P. L. 149, entitled " An Act to authorize the courts to correct defective certificates of acknowledgment in certain cases." Its object seems to be to permit parties holding real estate under a conveyance in which the officer's certificate of acknowledgment is defective in form, while as a matter of fact the conveyance was really and properly acknowledged, to take steps to have the defects cured by the courts. The act itself provides " that proceedings under this act shall be by bill in equity, as in other cases for the reformation of a written instrument." This direction would seem to be merely directory as to the form or method of procedure without authorizing the scope of inquiry ordinarily exercised by a court of equity. By the act itself the jurisdiction of the court is limited to the single instance in which a " party in interest" alleges that a certificate of acknowledgment defective in form " was in fact really and properly acknowledged in due form of law, by the grantor or grantors therein named." And in that instance, the court is only authorized " to examine into the truth of such allegation."

Hence it appears that the only matter which the court has any authority to inquire into or determine, in proceedings under this act, is the single question as to whether the instrument " was in fact really and properly acknowledged in due form of law, by the grantor or grantors therein named." . . . .

On the argument of the case, the attorneys for defendant explained, that, in denying that Mrs. S. M. Douglass was a party

to the lease or had ever joined her husband as one of the lessors therein, they did not mean to call in question the genuineness of her signature to the lease. But they claim, as a question of law, that because she is not named as one of the contracting parties in the body of the lease, her signing, sealing, acknowledging and delivering it, does not bind her, nor make her a party to the instrument. In support of this position, they cite a number of authorities, but rely principally on Jamison v. Jamison, 3 Wh. 458. It appears to the master that this authority does not support the position of the defendants, but the converse. The case of Jamison v. Jamison, and the one now being considered, are similar in several respects. In each case, the title was in the wife. In neither case, is she mentioned in the body of the instrument as grantor. In each case, the contract is made with the husband. In each case, the conveyance purports to be of all the tract or tracts of land described in the respective instruments, and in each case the wife joined in the instrument by executing and acknowledging it. In Jamison v. Jamison, it was held that the instrument, which was a mortgage, was sufficient in law and binding on the wife. Near the close of a very exhaustive opinion, SERGEANT, J., says: " I am therefore of the opinion that the defendant's interest passed by the sealing and acknowledgment of the mortgage, though she was not named as a party in the premises." We think the line of reasoning by which the Supreme Court arrived at a conclusion in Jamison v. Jamison, is fully as applicable to this case as it was to that, and under the authority of that case, the lease in this case is binding on Mrs. Douglass and is her deed, if it was properly acknowledged.

On the argument, it was also claimed that the bill was defective for want of sufficient parties, and numerous authorities were cited in support of the position, which we think would be conclusive in most cases, and we are not free from doubts in this case. . . . . . The defendants claimed that no decree could be made in this case without directly affecting the interests of Mr. McCarrell, and that he was therefore an indispensable party to the action. We think this would be true if, in a proceeding of this kind, the court could extend its inquiries through the same scope as in most equity proceedings; and, if true, the authorities cited by the defendants would fully sustain their

position. But if we are correct in the opinion we have above indicated, as to the limitation put on the inquiry of the court by the said act of assembly, we are tied down in this proceeding to the single inquiry as to whether the lease " was in fact really and properly acknowledged in due form of law," by Mrs. S. M. Douglass ; and the court would have no power to make any decree under the prayer in the bill for general relief; the only thing which the act authorizes the court to do, being to make or decline to make a decree granting the specific relief asked for in the second prayer. Hence we conclude that Mr. McCarrell can in no way be concluded by any decree which the court has authority to make in this proceeding. Consequently he is not a necessary party to the bill. We are far from being free from doubt on this branch of the case, but if we are wrong, the court will correct us. . . . . .

Mr. McCarrell, to whom the lease made to C. M. Reed was assigned, and who is plaintiff in the action of ejectment now pending in the Court of Common Pleas of Washington county, Pa., for the land described in the bill and answer, is the same party who appeared as attorney for defendants in this case. He was present before the master, contesting this case through the entire proceedings. He had full knowledge of everything that was done ; and, consequently, could not be prejudiced for want of notice. And if the court should be of opinion that he is a necessary party to this bill, they can amend the record, by adding him as a party defendant at any stage of the proceedings.

—Upon the foregoing findings of fact and law, the master recommended a decree that the certificate of acknowledgment of the lease from the defendants to C. Meyran be reformed in accordance with the prayer of the bill, and that the costs be paid by the defendants, M. V. Douglass and Mrs. S. M. Douglass.

Exceptions, filed with and overruled by the master, were renewed before the court by the defendants, and after argument thereof, the court, McIlvaine, P. J., filed an opinion which, after stating the facts, proceeded :

The defendants filed several exceptions to the master's report, most of which were overruled by him. Those that were overruled were renewed in this court, and may be conveniently grouped under three heads. And we will thus consider them.

1. That the master erred in holding that S. M. Douglass executed this lease. An inspection of the lease reveals the fact that the name of S. M. Douglass is not in the body of the lease, and it is claimed that her signature at the end of the lease and her acknowledgment that she executed it, does not make her a party to the lease. We do not think that this exception is well taken. It is admitted that it is her land that is described in the lease ; that it is the right or privilege of boring or drilling oil- and gas-wells upon this land that is being granted. At the conclusion of the lease are found these words : " In witness whereof *We*, the said parties of the first and second parts, have hereunto set our hands and seals," etc., and immediately under are the names and seals of M. V. Douglass, S. M. Douglass and C. Meyran. This would indicate that S. M. Douglass was and considered herself as much a party to the lease as her husband M. V. Douglass. These signatures were witnessed, and M. V. Douglass and S. M. Douglass acknowledged that the *foregoing* indenture is *their* act and deed. The husband in this case could not make a valid lease alone, and, as the evident intention of these parties, gathered from the face of the written instrument, was to make a lease of this $23\frac{1}{2}$ acres for oil and gas purposes, we must give effect to this intention by holding that S. M. Douglass was one of the parties to the lease.

2. That the master erred in finding, as a fact, that this lease was acknowledged " in every respect as required by law." A master's findings of fact will not be disturbed by the court unless there is manifest error. The master having examined the witnesses is better able to judge of their credibility and to correctly weigh their testimony. We are not able to say that the master has erred in coming to the conclusion he did in regard to the acknowledgment taken by Esquire McCullough, and therefore this exception must be overruled.

3. That the master erred in holding that the only thing that he could determine in this proceeding was whether the allegations of the bill were true or not, and that the facts set forth in the fifth paragraph of the defendants' answer (which are admitted to be true) could not be taken into consideration in determining whether the plaintiff was entitled to a decree or not, and in holding that Mr. McCarrell was not a necessary party to this proceeding.

The fifth paragraph of the answer is as follows : " Your respondents, for further answer to said bill say that on the 21st day of January, 1888, they executed, acknowledged and delivered to C. M. Reed, Jr., a lease of the said real estate for gas and oil purposes, which lease is recorded in Deed Book 142, page 467 ; which lease is now held by L. McCarrell, of Washington, Pa., by assignment from the said C. M. Reed, Jr. ; and that to No. 31 May Term 1888, an action of ejectment has been brought in the Common Pleas of said county by the said L. McCarrell, against the said Manufacturers Natural Gas Company, to recover the possession of the said leasehold estate, which action of ejectment was brought prior to the date of the filing this bill in equity."

It must be conceded that the lease of December 29, 1885, on account of its defective certificate of acknowledgment is not complete evidence to prove title to the lessee, C. Meyran ; and it is further conceded that the object of this proceeding is to make it admissible in evidence for that purpose, by obtaining a decree of this court reforming the certificate of acknowledgment. Before the bill was filed asking for this reformation, L. McCarrell had instituted his action of ejectment ; and, if this certificate is now reformed, then, that which could not have been admitted as evidence, when he brought his suit, is made evidence by a decree of this court in this proceeding. Taking it for granted, then, that the decree recommended, if made, would make the lease of December 29, 1885, admissible in evidence in the ejectment suit, and to make it admissible as we have already said is the avowed object of this proceeding, then ought not L. McCarrell to have been made a party, and ought not he to have been heard ? Would it be " doing equity " to make a decree prejudicial to his right, without allowing him to file an answer and to call witnesses ? S. M. Douglass no longer owns the interest in controversy, but on the contrary it is admitted that it either belongs to the plaintiff or L. McCarrell. And the very object of the plaintiff in this proceeding is to better fortify itself in this legal fight with McCarrell. And, taking this view of the case, we think the master erred in not holding that L. McCarrell was a necessary party to this proceeding.

But, should it be conceded that the decree recommended, if made, would not make the lease admissible in evidence in this

action of ejectment, then the decree would amount to nothing, and it is not to be supposed that the legislature, when they passed the act of 1878, intended that courts should spend their time in making decrees that would benefit no one.   And it has been suggested with great force that the legislature intended that this proceeding should be resorted to only for the purpose of establishing the validity of a deed as between the original parties thereto, and before any suit may have been commenced to recover the real estate conveyed by the instrument of writing which is defectively acknowledged.   If this is correct, then the plaintiff in this case is too late in applying for relief, for S. M. Douglass has made another lease to another party for the same property, and this second lease has been made the basis of an action of ejectment.

In brief our opinion is this, that if a court of equity, under the pleadings and facts therein set forth, can proceed to determine the rights of the parties in the premises, then, that it can only do so by having all those who are interested made parties to the proceeding.   If this position is not tenable, then we hold that under the pleadings and the facts therein set forth a decree cannot be made, as the act of 1878 does not apply, and that these parties to this ejectment must stand upon their leases as they were when suit was brought.   We are therefore of opinion that the bill in this case must be dismissed at the plaintiff's costs and let a decree be prepared accordingly sec. reg.

A decree having been entered in accordance with the foregoing opinion, the plaintiff thereupon took this appeal, specifying that the court erred:

1. In not entering the decree recommended by the master.
2. In entering the decree appealed from.
3. In imposing the costs on the plaintiff.

*Mr. M. C. Acheson* (with him *Mr. A. W. Acheson* and *Mr. George W. Guthrie*), for the appellant:

1. As to the objection that Mr. McCarrell ought to have been made a party to the bill, and heard as such, we regard the remarks of the master as unanswerable.   As the master says, he appeared as the attorney of the defendants, was present contesting the case throughout the entire proceeding, and had full

knowledge of everything that was done ; and, if he be a necessary party, the record could be amended by making him a defendant at any stage. If this court thinks he should be made a party, it is not too late to do so now. It is to be observed that there is no allegation that he is an innocent purchaser. In fact, he took the second lease, relying upon the defect in the certificate of the acknowledgment of our lease. The defence of the defendants is his defence, made for himself in the name of his clients.

2. Prior to the act of May 25, 1878, P. L. 149, defects in the certificate of acknowledgment to a deed, could not be aided by parol testimony that in fact the deed was duly acknowledged. That act, passed for the purpose of allowing such defective certificate to be reformed, is remedial and should be liberally construed. The purpose of the proviso to the first section was simply to preserve the status of suits commenced before the act was passed. Such is the meaning of the proviso, according to the ordinary rules of grammatical construction. Why should a court of equity violate these rules, in construing it so as to make it sustain a defence against good morals and common honesty? Construed as a saving clause, applicable to actions already pending, it is clear and sensible.

3. The construction given to the proviso by the court below destroys the intention of the act. An honest vendor will correct a defect in form voluntarily ; it is when the vendor is seeking to defraud the vendee that the relief given by the act is needed. It is not reasonable to give a remedy, and then take it away if the wrong doer tries to give effect to his rascality before the injured party discovers it and seeks redress. It has always been the custom to attach to remedial statutes provisos like this one, for the purpose of saving vested legal rights to enforce which actions were brought before the passage of the acts, and never before has such a construction been adopted. A proviso is to be construed strictly ; it takes no case out of the enacting clause not fairly within the terms of the proviso : United States v. Dickson, 15 Pet. 165 ; Folmer's App., 87 Pa. 137. But the defendants have no standing for their defence, even if an action brought by themselves would be a bar.

4. Leaving out of view the effect of the proviso to the act of 1878, it is not sufficient, to prevent a decree of reformation,

to allege that a second lease was made, unless it be shown, also, that the holder of it was an innocent purchaser for value without knowledge or notice of the first lease: Bispham's Eq., § 275; Brightly's Eq., §§ 660, 671. A subsequent purchaser is presumed to know that the law allows such reformation, and equity considers that as done which ought to be done. The part of the answer and testimony relating to the second lease was not in response to the bill, but in avoidance thereof, and the defendants must show facts rendering it inequitable for the court to make the decree prayed for. Such a decree will not conclude an innocent purchaser, any more than an unrecorded deed; he can assert his equity in an action at law notwithstanding the reformation. Even if the court was right in dismissing the bill, it should not have given the defendants costs as a reward for their iniquity: O'Hara v. Stack, 90 Pa. 492; Gyger's App., 62 Pa. 80.

*Mr. D. W. Brown* (with him *Mr. J. W. Donnan* and *Mr. A. Donnan*,) for the appellees:

1. By reason of the defective acknowledgment the lease to Meyran, as written and recorded, passed no title to the lessee: Steele v. Thompson, 14 S. & R. 92; Barnet v. Barnet, 15 S. & R. 72. This defective title cannot be perfected at law by parol evidence: Graham v. Long, 65 Pa. 386. The question is whether the plaintiff is entitled to a decree of reformation under the act of May 25, 1878, P. L. 149. The object of the plaintiff is to obtain such relief as will enable it to maintain its possession and title against the subsequent lease to Reed, now held by Mr. McCarrell. The latter is a necessary party: Mitford & Tyler's Eq., 36; Story's Eq. Pl., § 72; 1 Daniel's Ch. Pr. 190, 246; Shields v. Barrow, 17 How. 130; Barney v. Baltimore, 6 Wall. 284. The fact that he was present at some of the hearings does not make him a party to the record, or give the court any right to enter a decree against him: Nace v. Boyer, 30 Pa. 108. That the defendants do not assert that he is an innocent purchaser, signifies nothing. How could they make such assertion, when they had no dealings with him and no knowledge as to how or when he obtained his title?

2. The plaintiff appears to admit that Reed took the lease

without knowledge of the existence of a prior lease. There-fore, even if direct and positive notice had been given Mr. McCarrell before his purchase from Reed, he could protect himself by the equity of his assignor: Filby v. Miller, 25 Pa. 264; Bracken v. Miller, 4 W. & S. 102; Story's Eq. Jur., § 409. But whether it is admitted that Reed had notice or not, as he took the lease for a valuable consideration, the bur-den was on the plaintiff to show that he had notice of the facts requisite to give a perfect title: White & T., L. C. in Eq., 99. The answer of the defendants gave the plaintiff all the infor-mation necessary to enable it to have all the parties interested brought before the court. Whatever may be its reason for omitting to do this, it is fatal to the plaintiff's obtaining any decree in the case: Story's Eq. Pl., § 75.

3. Independent of the question as to the necessary parties, the plaintiff was not entitled to any relief under the act of 1878: (1) Because, under the facts found by the master, the proviso to the act excepts this case out of its operation. This is the plain signification of the language. (2) Because the rights of Reed and his assignee, purchasers for value, without notice, have intervened: Kerr on Fraud and Mistake, 436; Insurance Co. v. Union Canal Co., Bright. 53; Heilner v. Imbrie, 6 S. & R. 411; Juvenal v. Patterson, 10 Pa. 283. (3) Because the lease does not upon its face show a grant by Mrs. Douglass; she is nowhere named in the body of it, or joined with her husband in the operative words of the instru-ment, and it can have no operation against her: 1 Shep. Touch., 76; 4 Cruise Real Prop., ch. 32; 4 Cruise Real Prop., ch. 3, § 44; Lithgow v. Kavenagh, 9 Mass. 161. In the argu-ment respecting costs, the plaintiff overlooks the fact that the lease was obtained on the representation that developments were to be made within a year, and no steps were ever taken to comply with this part of the contract.

OPINION, MR. JUSTICE MITCHELL:

The learned master and court below gave too wide a scope to the proviso of the act of May 25, 1878, P. L. 149, in holding that the word " already " referred to the time of the filing of the bill. The act was intended to provide a remedy for cases of formal defects in certificates of acknowledgment of deeds,

mortgages, etc.  Such acknowledgments, especially where, as in the present case, they relate to married women, are extremely technical; and yet, under the impulse of business convenience, the power of taking them has been enlarged from time to time; so that it is now committed to large classes of unlearned persons, not merely justices of the peace, but notaries, commissioners, etc.  The general policy of the law requires that the presumption of absolute accuracy shall attach to such official certificates.  The safety of all parties dealing with titles to land, etc., necessitates such a rule.  Yet cases of accident, arising from ignorance or carelessness, might entail great hardship; and it was to remedy such cases, in a due and orderly manner, without unnecessary interference with the general rule of conclusive presumption of verity, that the statute was passed.  This being its purpose, there was no good reason why any cases should be excluded from its operation, except the wise general legislative exception of pending actions, and we are of opinion that that is all the proviso intends.  That is the primary grammatical meaning of the word "already" in the sentence as it stands.  It refers to present, not to future, time, which would have been naturally and clearly expressed by the phrase, "where suits shall have been commenced," etc.  There is certainly nothing in the language used to indicate that the legislature meant that the remedial act should or should not apply to future suits, according to the result of a race between a fraudulent grantor and an unwary grantee for the court-house door.  The present case is clearly within the statute.

Under the second section of the act the remedy to any party in interest is by bill in equity.  The provision is brief and general, and we see no reason why it should not be held to carry with it the usual attributes of equitable remedies, among the most important of which is that the court shall have before it and determine the rights of all parties in interest.  Any other construction might result in the establishment of a valid certificate for one party, and an adverse verdict on the same certificate in the same hands, when challenged by a different claimant.  Such a result would be a reproach to the law. The learned court was therefore right in holding that McCarrell, the present claimant under the second lease from the Douglasses, was a proper party to the bill.  But we think the

court should have allowed him to be added as a defendant, especially in view of the circumstances showing his knowledge of the proceedings. Whether he is in position to claim as a purchaser without notice, or to defend on his assignor's title; or, whether he has estopped himself in any way during these proceedings, are questions that were suggested in the argument, but do not arise in the present state of the case, and on them we express no opinion.

> Decree reversed, and bill reinstated, with directions to allow complainants to amend by the addition of any other parties in interest, and for further proceedings in accordance with law; the costs of this appeal to be paid by the appellees.